Case number 18-2747, James Walther v. Florida Tile Inc. Court argument not to proceed with appeals. Please proceed. Robert Petroulis for the appellant. You may proceed. Good morning, Your Honors. Good morning. Robert Petroulis for the appellant, Florida Tile. All right. I'm going to use eight minutes now and reserve seven minutes for rebuttal if that's acceptable to the court. All right. Thank you. Your Honor, a well-known political figure from the 1800s who was also a lawyer cautioned us that we should try to avoid litigation whenever possible. In the absence of litigation avoidance, there is a distinct possibility that society is going to grind to a halt. This is a case in which that principle was not followed. This is a case in which a plaintiff actively sought litigation rather than resolution, has actively sought perpetuation of that litigation, manipulation of that litigation, multiplication of that litigation, and expansion of that litigation. In terms of seeking litigation, this is a case in which the plaintiff made a secret audio recording of a conversation that took place in February of 2017. He didn't like what was said by his supervisor in that conversation, and he had it on tape. He reported this to his employer. He reported it to HR, and HR appropriately said, Thank you for letting us know about this situation in which you are alleging that a criminal offense was committed against you, namely extortion in the workplace arising out of the attempted denial of unemployment benefits, although he was still employed at the time. The employer responded appropriately and said, Rachel, another HR person, will begin investigating this issue today. Is there anything else we should be made aware of? Well, of course he had this conversation on tape, but rather than saying, Yes, I have this tape, he said, Thanks, Clark. That's the HR. May I ask you, Counsel, how does this business regarding the tape relate to whether the district judge abused his discretion in granting the motion to voluntarily dismiss without prejudice? Isn't that the primary issue we're here on? That is, Your Honor, and what happened, Your Honor, is that the plaintiff in this case retained that tape for months, for nine months before he provided that audio recording in connection with the litigation. He took the deposition, the plaintiff took the deposition of the supervisor, and at 5.01 p.m. on the day of deposition, he pulled out this altered audio recording, which had some exculpatory information in the middle, and took these two pieces of recording together and played it for the plaintiff and asked him some questions, excuse me, played it for his supervisor and asked him some questions about it. The way this all relates, Your Honor, that that is just one indication of the vexatious nature of the litigation in which the plaintiff has engaged throughout this case. The error committed by the district court, Your Honor, is that the defendant suffered plain legal prejudice. Can I go back to the recording just for a moment? Because I have understood what you said, and I think your clients also described that hiding and keeping secret the recording is demonstrably dishonest. I think I can attribute those words to you. But what has Florida Tile done in response? I mean, for instance, my understanding of the record is the best that's been provided by your client is an unofficial partial transcript, meaning that if the magistrate judge and district judge were misled, your client hasn't improved that and certainly didn't improve it in the opposition to the Rule 41 or the objection to the magistrate judge's report and recommendation. The entire one-hour recording, Your Honor, is in the record. There's a transcript of the full one-hour recording. I'm not as concerned, if you don't mind this distinction, about the record as it is now. I'm thinking about the record as it was before the magistrate judge and the district judge who ultimately agreed to the dismissal without prejudice. Yes, Your Honor, the magistrate judge and the district judge did have the full transcript. When Mr. Tackett's deposition was taken, as I said, that was a full-day deposition. At 5.01 p.m. is when Mr. Matthews played a portion of that tape. We did produce and make part of the record an unofficial partial transcript, but Mr. Matthews brought that full circle by having that one-hour recording transcribed by the same court reporter who was present at the deposition of Mr. Tackett. No one is questioning that. That was the official court reporter, and that is the official transcript. So even if we provided only a partial unofficial transcript, Mr. Matthews did provide and have a court reporter prepare the full transcript. And even still, just thinking about the posture of the case, because that deposition of Mr. Tackett occurred, my understanding is Mr. Walter was deposed the very next day. There was even some agreement to extend discovery. I mean, that was very early on, within three months or so of the case coming to the federal court. I'm just not seeing the extreme prejudice. Well, the prejudice that we see, Your Honor, is there's at least two aspects of prejudice. One is there are some legal fees in this case that are absolutely on the part of Florida Tile that are absolutely unquestionably wasted. And those came in the form of there was an extensive temporary restraining order procedure. There's about ten docket entries. There was a hearing relating to the temporary restraining order. There was a hearing by the district judge. And essentially the plaintiff was seeking a prior restraint on speech, namely that we should not be able to talk about him. What came out of that proceeding is that there was absolutely no evidence that Mr. Walter possessed or anyone else on their side possessed that anyone had spoken ill of Mr. Walter. And that's exactly what the district court said in dismissing the temporary restraining order proceedings. So your client won that battle. Right. And that's the nature of litigation. Yeah. So I'm still waiting, and I know you're building up to it. I'm just urging you to the point where it became so prejudicial that the judge's ruling and allowing it to continue, even if in a different venue, is something that we should correct. Well, what makes the temporary restraining order proceedings over the top is that they were entirely wasted. The plaintiff conceded that he had no ink. Counsel, the background question is, is this a could or a should issue? Of course the court could have given you a different decision. But in order for you to show the necessary prejudice in this case, you have to show that the court must have given you that. And I'm not seeing that that's the standard. Yes, Your Honor, and where the line was crossed, where the district court went from being within its discretion to being reversible error, there are at least two very clear issues. One is that Mr. Walther continues to possess what he says are thousands, potentially thousands of floor-to-tile documents that the district court ignored and did not explain in its decision in terms of why it did not. What case law do you have that said that the court is required to order that those be returned? Your Honor, I have no case law that says that. And these cases are very highly fact-dependent. And that was a critical fact that was ignored. So the two clearest issues, at least. And what would indicate to you that it was ignored rather than the court looked at it and in its discretion and wisdom determined that they should not be ordered to be returned? Your Honor, because the court, there's a clear mistake of fact in the magistrate judge's opinion and in the district court's adoption of that magistrate's order. And the error is the court said, you know, these were received in discovery, and if we wanted a protective order. Educate me. Did the court specifically say these were received in discovery? I understood that that's the conclusion that you drew, but I don't remember that the court said these were received in discovery. I thought the court was a little amorphous on that and was simply saying they may be used in subsequent litigation, therefore I'm going to leave it as it is. Well, the court did not use those explicit words. Let me be clear on that, Your Honor. But what the court said is if I make the plaintiff return those documents, then we're going to have duplicative discovery. And duplicative discovery suggests that discovery has happened before. Those documents were not produced. Perhaps the court didn't draw that same conclusion, that what the court meant was it would be duplicative in that it's already in the possession of the party, and so there's no need to duplicate that by having a subsequent request. That is a possible inference, Your Honor. And if that's a possible inference, then we are not in abuse of discretion land, are we? Well, I think we still are in abuse of discretion land because, again, there is plain legal prejudice. We lost a defense. We lost what could have been a complete legal defense in this case. We attempted to moot the plaintiff's claim. We attempted to do that by making a more than 100% offer of judgments. Your time's up, but let me just ask you, what defense did you lose? Well, we had the ability to moot the plaintiff's claim by offering 100%. But you claim you did. I'm sorry? But you claim you did. Your client says, I have made an offer of 100%. It would moot the claim, and the client did not accept it. So what defense did you lose? Well, the mootness, a plaintiff's refusal to accept an offer of judgment, that's discretionary on their part. But there is case law that says that when a plaintiff has received 100% of what he could receive, there's no case in controversy anymore. If it's discretionary, I'm sorry, I'm just trying to understand, just one direct response, what defense did you lose as a result of the rulings? We lost the ability to moot the case in its entirety. Counsel, if you want to continue with your argument at this point, you can take some time from your rebuttal time. Do you want to do that? I'd rather say for rebuttal, Your Honor. I understand if I've lost some of my rebuttal time, I'm fine with that. All right. Good morning, Your Honors. Good morning. I'm Craig Matthews. I represent the appellee in this case. I'm joined this morning at counsel table by my associate, Kyle Miller. Ironically, Your Honors, the appellee, the appellant, represented by one of the largest labor law firms in the United States, is basing their argument, a fact-based argument, on a position that contends that the appellee, represented by a small firm in Centerville, Ohio, outmaneuvered them. Now, perhaps I should be honored, but I am not, because the argument presupposes that I somehow managed to pull the wool over and mislead and cause to make an error of fact a federal district court judge whom I greatly respect and have worked with professionally for 30 years. I take strong objection at that. It was a part, a good portion of the reply brief of the appellant and a good portion of his testimony this morning. What I would like to do is demonstrate to Your Honors this morning the record that was before the district court that belies this entire argument that there was any intent to mislead or any misleading or mistake of fact. Well, there was, I think if there is a fair reading given, there was something that was said that was different from what I believe your writing to this court indicates happened. So when the magistrate judge wrote in the report and recommendation, it acknowledged that the delay was of no significance because the case would likely resume in another forum. The district court judge acknowledged that the magistrate judge had not specifically, the judge wrote the report fails to specifically address the return of Florida Tiles documents. Went on to say it is fair to surmise from the report, however, that the magistrate judge considered the return. And then I think the point Mr. Petroulas was making is that later by way of example, perhaps the judge wrote if defendant wanted to condition its provision of certain documents. And I think that in Mr. Petroulas' client's mind is problematic because their point is judge, we never gave Mr. Walter those documents. So it's not the provision. He kept them when he was employed by us and we should get them back. Yes, Mr. Petroulas' client acknowledges we're going to base number them and give them back should they be requested because they're otherwise responsive. But that's the wrinkle that the judge says if defendant wanted to condition its provision, it should have had a protective order. And could you speak to that? Is that trickery? Is that so misleading that it resulted in reversible error? Absolutely not. And there's no case law that would suggest that. And the fact of the matter is that it was in the record that, and clearly in the record, that very limited discovery had been exchanged. Several files had been exchanged. And that was it. That was clearly in the record. There was never any suggestion in the record that anything more than that was done. The argument that the appellant makes is that they wanted us to return documents that they believed had been provided to Mr. Walter over approximately more than 20 years of his working for this company. But it's erroneous for the appellant to argue that the district court was misled in that regard. No one stated that those documents had been subject to discovery. They had not been. The fact of the matter is that early on in these proceedings, on document number 8, on August 21st of 17, I filed a motion for leave to take Mr. Tackett's deposition. And the court on August 28th, document 15, overruled that motion. But in his ruling, he held this ruling should not be interpreted to prohibit scheduling Tackett's deposition before the parties have exchanged written discovery or Walther's deposition. He states in there, Walther should be permitted to seek evidence necessary to support his motion for preliminary injunction on an expedited basis following the Rule 26 conference. So the court was very aware that we were attempting to take a deposition of Mr. Tackett at a very early stage before discovery had been exchanged. We then filed a notice of deposition of Mr. Tackett, document number 17, filed on September 20th, noticing him for October 17th, which the date had been agreed upon, obviously, by the appellant. Then, shortly thereafter, document 18, on September 26th, we filed, the parties jointly filed, their Rule 26F report. In that report, I'd like to draw the court, which is part of the record, of course, I'd like to draw the court's attention to a few telling things. One, we had agreed that a cutoff for filing amended pleadings was November 6th, 2017. We indicated for the recommended discovery plan and described the way discovery is to be sought. It was a three-part plan. The first part was the plan was to make a settlement evaluation. And in connection with then what is going to be done to do that, number one, depose Jason Tackett and James Walden. That was the discovery plan. We never planned. We agreed. This is the agreed Rule 26F statement. We never agreed or planned to do anything more than take those two depositions, which we did. On the next page, page four, we disclosed, the parties have electronically stored information, we disclosed WMV files. WMV files are audio recording files. That's the only thing they are. I don't know how we could be more transparent than to disclose. This case involves WMV files. And then we agreed that the settlement demand can be made after we take Tackett's and Walden's deposition. So the parties agreed right from the start, we're not going to conduct discovery, we're not going to do anything other than take these two depositions, which we did. And then embark in discovery. Then, document 22, on February 13, 2018, a joint motion, joint motion, to extend the deadlines. We informed the court that a mediation had been scheduled for February 26, and we informed the court that the deposition had been taken. We informed the court also, this is a joint motion, also each party has served a set of written discovery requests on the other, but the parties have put that discovery, as well as any additional deposition activity, on hold, to avoid incurring significant legal expenses before the mediation. This is part of the record, and this was signed by counsel. Finally, document 29, on April 20, 2018, we filed our motion to voluntarily dismiss the case without prejudice, because the mediation had proved unfruitful. How far in advance of the depositions was the document that included the reference to an audio tape? That, Your Honor, was filed on September 26, 2017, and the deposition was noticed for, his deposition was October, so the following month. And there was no motion, and is it your position that there was an agreement that this information had been provided to both sides, and the agreement was no one would do anything about that until after the depositions? The agreement, as reflected, Your Honor, in the joint pretrial statement, was that there would be no discovery other than the deposition of Mr. Tackett and the deposition of Mr. Walther. There was no motion filed for the audio tape, no request? Absolutely, none. Did you receive a request for an audio tape? No, no. Well, I don't want to misspeak, because that was a long time ago. I don't believe that either party exchanged, at this early phase, exchanged written requests for discovery or so, because, as reflected by that joint statement, we had agreed we're not going to incur the expense of voluminous discovery exchange, which would have included, of course, everything we had, including audio tapes, digital image files, everything. We had agreed not to do that. Let's take these two depositions, evaluate if the case can be settled, and then, if it can't be settled, proceed with discovery. That's an important point. Have you engaged with the circuit mediator here in the Sixth Circuit? Yes, we have, Your Honor. And has that been completed and failed? Failed, Your Honor. I would suggest to you that this might be a time to consider reopening that. The panel may agree or not. For me, these are really difficult cases. You have a long-term employee who feels like he's been terribly mistreated after giving a lifetime to a job. You have an employer who feels like it's been betrayed by an employee who has kept its documents and feels threatened by them. The best way for both of you to feel like you have a hand in resolution is to sit down together and figure out together what you can do. You can save everyone a lot of money and a lot of time and the exacerbation of a lot of unhappiness by sitting down and seeing if this is not a case in which both of you can walk away. And as an old district judge said to me once, well, everybody walked away a little mad. I guess it was a good settlement. Correct. A farmer many years ago, early in my practice, had a good deal. The two people walk away and they're both unhappy. I totally agree. But, Your Honor, we explored mediation, private mediation, with an excellent mediator here. And then the excellent Sixth Circuit, I can't remember her name right now. If your opposing counsel is willing, are you willing to sit with the circuit mediator again? Absolutely. I am always available to do that, Judge. Always available to do that. Thank you. Can I revisit the reason for your need to dismiss? That's for the purpose of starting over, adding new causes of action and all that. I'll tell you again. The reason to dismiss, by the time the mediation was over, the agreed-upon deadline to amend our pleadings had already passed. I didn't anticipate that when I entered into that agreement to cut that amendment date, but I did. And now at the mediation and matters we discovered subsequent to the mediation, we realized we have a new cause of action. We need to bring Mr. Tackett in. That's what I wanted to ask you about. What was it that you discovered that caused you to think that you needed to do this? Mr. Tackett was portrayed as acting as a rogue agent. The tape indicated that he had the direction and the mandate of top executives in Florida Tile. And we later discovered that now they're going to be claiming he acted as a rogue agent. He wasn't acting at the mandate of the executives. Well, then he is intentionally interfering with a business relationship here. That's an outrageous thing for a manager to do. Frankly, I don't believe that's true, but that's the defense they're going to make. If that's the defense, we need to bring Mr. Tackett in here. Secondly, the Ohio Whistleblower Protection Act provides for damages being lost wages, attorneys' fees, and reinstatement. So that is, and reinstatement has been interpreted, I believe, by this court, I know by district courts in Ohio, has been interpreted as allowing for front pay where the reinstatement is, as a practical matter, just impossible. Obviously, in this situation, reinstatement is ridiculous. But that's never been interpreted specifically under the Ohio Whistleblower Protection Act. So we wanted to amend our pleadings to bring in a violation of public policy claim, which would not limit our damages to reinstatement. So we're bringing in a claim against Mr. Tackett individually for his willful conduct, if that's what he did, and then we're bringing in a public policy claim to allow us to get by this apparent limitation of reinstatement. And without that amendment, would there have been room for you to seek punitive damages? Absolutely. As pled? Absolutely. Because you understand Florida Tile believes that wasn't the case, but it may be after refiling. Correct. All right, then. Correct. I'm sorry, I didn't understand your answer. Did you think you had a punitive damages claim before this change in the structure of your lawsuit, or only after? My belief, my assessment, I don't remember, Judge. I don't remember. But you think afterwards you certainly have a punitive claim? Absolutely, yes. Correct. Correct. Because of the intentional conduct on the part of Jason, if that's what happened. If that's what happened. Effectively in the alternative. Either he's a rogue or the company did it, let the evidence show. That's correct. That's correct. One or the other. And I see my time is up there. I'd like to close by bringing one thing to the Court's attention. I think you're already aware of it. Two people enter a room. One of them states, everything I'm going to be telling you is off the record, and if confronted, I will deny it. That's what he said. That's in the record. The other person enters the room. They have a tape recorder. Now, the appellant is arguing that one of those people is trying to mislead the Court. And I ask you, who is trying to mislead the Court? And I will close on that note. Thank you very much. Thank you. No problem. Thank you. Your Honor, the misleading of the Court took place by the plaintiff holding onto and hiding for nine months that audio record. One of the ---- I think, Counselor, that this is why this is a case in which the parties should sit down again. Are you willing to sit down again with the circuit mediator and see if the likely justifiable concerns on both sides can be put to bed by a voluntary agreement? Your Honor, given the enormity of litigation costs in this case, if one looks at the docket in this case, it's eight pages and 40-something entries. This is not a small case. There has been a lot of activity in this case. Given the tremendous expense of litigation, both past and the litigation that's going to come in the future, and the relatively small cost, virtual no cost, of your mediators, yes, my client would be willing to go through that process. I would think that that's advisable. You can spend the money on fighting with each other, or the plaintiff can have some more in his pocket, and you can be done with it. Yeah. And the problem has been the unreasonable. We don't need to get into settlement issues here, but our offer of judgment was a more than 100% offer of judgment. We didn't offer just reinstatement or back pay because the statute isn't clear. Someone could argue that somehow you get both. We offered reinstatement. We offered back pay. We offered reasonable attorney's fees to be termed by the court. We offered witness fees. The problem is- I don't know that our court needs to get into these settlement negotiations and the settlement terms that you all have been involved with. I don't think that's appropriate. Understood, Your Honor. On the issue of misleading, again, it's the good thing about having an audio recording is that you have the audio recording. The bad thing about making an audio recording is that you're stuck with what's in the audio recording. The plaintiff in this case tried to have the best of both worlds, namely not tell anyone about the audio recording for nine months, yet submit multiple affidavits in multiple forum, including to the district court and to the police, in order to perfect- Is it incorrect that the audio was listed on the filed form prior to the deposition? Is that not true? If Mr. Matthews says that NBWA means audio recording, then if that is in his disclosure, that's in his disclosure. But he was not giving that to me prior to- When you saw that on the disclosure, did you move the court or request it from him? No, because we agreed, Your Honor, in the interest of saving on litigation costs, which hasn't happened in this case, we were going to take the deposition of Mr.- Then you must have known that your client was going into a deposition and that your opposing counsel held an audio tape. That could have been inferred, yes, that could have been inferred, Your Honor, but we had agreed, and maybe that was a- Why does belaboring this audio tape, what has that got to do with whether the district judge abused his discretion? I mean, you keep talking about the tape, but you're not tying it back to the district judge's decision. Your Honor, it goes to the vexatious nature of the litigation, and what I was- But there was only one tape. It's not multiple tapes and multiple incidents you're referring to. For something to become vexatious, you think of something that happens over and over again. There is a tape. There is a key tape, and that's a one-hour tape. But when the court reviews the record, it will see that prior to providing us the tape in October, the plaintiff submitted multiple motions and multiple affidavits to the court that are not entirely consistent and in some ways are inconsistent with the audio recording once we saw it. And in terms of, there were questions earlier about the documents. How does that make the district judge's opinion inappropriate? You're talking about all these things. You're not talking about the judge's exercise of his discretion. I mean, it's like our time is being wasted up here because the principal issue is not being addressed. The clear reversible error, Your Honor, the abuse of discretion in this case comes from two sources, and that is the district court's lack of acknowledgment of the documents and the need to return our thousands of business documents to us. Well, actually, if the judge is dismissing the case without prejudice, that doesn't preclude you from obtaining the documents even subsequently by other means. You're not precluded from getting the documents because the case has been dismissed without prejudice. So how are we to take that into account in exercising and evaluating the factors to determine whether or not the dismissal without prejudice was proper or not? Your Honor, that was easy. That was the low-hanging fruit. It has been the, this is document number 34 in an attachment. Mr. Matthews says, I am not willing to designate as confidential documents that came into my client's possession  He says, I am not willing to provide Florida Tile with copies of the documents which were in his possession at the time he was fired. Bear in mind that these are documents that had come into his possession over 20 years. He'd routinely forward them to his own personal e-mail address, and it goes on and on. Also in that attachment, he indicates that there are actually 20 audio recordings. The other 19 are not yet at issue in this case, but the one certainly is. The prejudice to us, another aspect of prejudice to us, initially there was one defendant, namely Florida Tile, and there was one claim, and that claim was violation of the Ohio Whistleblower Act. Now as a result of this dismissal without prejudice and refiling, which we have removed to the district court again, we have two defendants, namely this Jason Tackett is the second defendant. We have four claims. We have the whistleblower claim. We have a public policy claim. Ohio law is clear that you can't have both. If you have a remedy under the whistleblower statute, you can't have a public policy claim. We have an intentional affliction of emotional distress claim, which is not available in employment cases. We have a defamation claim, which is beyond the statute of limitations. And that's what we're talking about when we say the plaintiff has done nothing but attempt to multiply the litigation in this case. We're going to have to redepose, and this again goes to the issue of the District of the Court of Appeals mediation process. We're going to have to redepose Mr. Walther all over again. We took his deposition once. We spent eight plus hours doing it. Now he has multiplied the litigation. He has increased his claims. And we have suffered prejudice, plain legal prejudice, in numerous ways, Your Honor. All right. I see that your time is up, and I thank you for your arguments. Thank you very much. And there being no further cases for argument, court may be adjourned.